IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ANTHONY WAYNE MARSHALL,
ADC #134079                                                                                  PLAINTIFF

V.                            CASE NO. 4:16-CV-00820-BD

KAREN GRANT, et al.                                                                       DEFENDANTS

# ORDER

## I.  Background

Anthony Wayne Marshall, formerly an inmate at the Faulkner County Regional Detention Center ("Detention Center"), filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. He claims that Defendants were deliberate indifferent to his mental health needs. (Docket entries #2, #20) He sues Karen Grant, an LPN at the Detention Center, Monte Munyan, another LPN at the Detention Center, and Scott Huffman, a Lieutenant at the Detention Center. Mr. Marshall requests monetary damages as well as injunctive relief and sues the Defendants in both their individual and official capacities.

Defendants have now moved for summary judgment. (#47) Mr. Marshall has not responded to the motion, and the time for responding has passed. (#50)

## II.  Discussion

### A. Standard

In a summary judgment, the court rules in favor of a party before trial. A party is entitled to summary judgment if the evidence, viewed in a light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute about any

fact important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

### B. Deliberate Indifference – Individual Capacity Claims

1. Undisputed Medical History

Mr. Marshall was detained at the Detention Center from August 27, 2016 through October 3, 2016, and from October 22, 2016 through February 21, 2017. (#49-1 at p.1) It is undisputed that several weeks prior to his incarceration, Mr. Marshall was seen at Rivendell Behavioral Health Services for suicidal ideation. (#49-1 at p.1; #49-3 at pp.2-11) He was prescribed Adderall (amphetamine) for ADHD; Klonopin (clonazepam) for sleep; Cymbalta (duloxetine) for depression; lithium for anger/mood, and propranolol for anxiety. (#49-1 at p.1; #49-3 at p.11)

On August 30th, several days after his initial detention, Mr. Marshall submitted a medical request stating that he needed to see someone from Counseling Associates. He explained that he had recently been released from "Rivendale" [sic] and did not have any of his medication with him. (#49-3 at p.81) On the same date, Defendant Grant responded to the request and told Mr. Marshall to complete a medical release authorization. (*Id.*) She stated that he would be seen as soon as his records were received. (*Id.*) On the same date, Dr. Stewart (not a party to this lawsuit) requested Mr. Marshall's medical records. (#49-1 at p.2; #49-3 at p.28)

On September 1st, Mr. Marshall filed another medical request asking to see his psychiatrist from Counseling Associates. (#49-3 at p.82) The next day, Defendant Grant

responded that Dr. Stewart would see him at the first available appointment after his medical records had been received. (*Id*.)

On September 4th and 5th, Mr. Marshall submitted additional medical requests asking to speak with Counseling Associates and also asking to receive his medications. (#49-3 at pp.83-84) Again, Defendant Grant responded to those requests stating that Mr. Marshall would be seen at the first available appointment after his medical records were received. (*Id*.)

On September 8th and 13th, Mr. Marshall again submitted medical requests asking to speak to a psychiatrist and requesting his prescription medications. (*Id*. at pp.85-86) Defendant Grant responded that she could not prescribe medication and that Mr. Marshall was to be seen by Dr. Stewart at the first available appointment. (*Id*.)

On September 15th, Dr. Stewart saw Mr. Marshall to discuss mental health medications. (#49-3 at pp.32-33) Dr. Stewart prescribed Mr. Marshall an anti-depressant, fluoxitine, and a beta blocker, propanolol, for anxiety and hypertension. (*Id*.)

On September 16th, Mr. Marshall filed another medical request asking to see Counseling Associates and to receive his medication. (*Id*. at p.87) On the same date, Defendant Grant responded by stating that Dr. Stewart had examined him on September 15th and that he was to continue to receive the prescribed plan of care. (*Id*.)

On September 20th, Mr. Marshall filed a medical request asking to see a counselor from Counseling Associates. In another medical request, he again asked for his prescription medications. (*Id*. at pp.88-89) Defendant Grant responded to the first request by stating that Counseling Associates would not see Mr. Marshall while he was

3

incarcerated. (*Id*. at p.88) She explained that Counseling Associates' employees had examined Mr. Marshall twice when he was admitted to the emergency room, but that Mr. Marshall had not attended either of his follow-up appointments. She told Mr. Marshall that he should let her know if he would like to see Dr. Stewart. With regard to the second request, she told Mr. Marshall that he would see Dr. Stewart at the first available appointment. (*Id*. at p.89)

On September 23rd, Mr. Marshall submitted another medical request asking whether his medical records had been received and, if they had, requesting a copy. (*Id*. at p.90) He also asked to be placed on the next "clinic call." (*Id*.) The same day, Defendant Grant responded that Mr. Marshall's records had been received and informing him that, after he was released from custody, he could request a copy of those records. (*Id*.) Defendant Grant also told Mr. Marshall that he was on the "list" to see Dr. Stewart the following week and that she lacked the authority to prescribe medication. (*Id*.)

On September 29th, Mr. Marshall submitted a medical request asking why he was not on the list to see Dr. Stewart. (*Id*. at p.91) The following day, Defendant Grant responded that Mr. Marshall was on the list, but there was not a "Dr[.]'s sick call this week." (*Id*.)

Mr. Marshall was scheduled to see Dr. Stewart on October 6, but he was released on parole on October 3, and did not attend that appointment. (#49-3 at p.34)

On October 22, Mr. Marshall returned to the Detention Center. (#49-3 at pp.35-37) On November 1, Mr. Marshall submitted an ADC Mental Health Services Request, which was approved by the ADC on November 21st. (#49-3 at p.37)

4

On November 9th, Mr. Marshall submitted a medical request indicating his need for medications. (*Id*. at p.93) The next day, Defendant Grant told Mr. Marshall that he was to be seen by Dr. Stewart at the first available appointment. (*Id*.)

On November 14, Mr. Marshall submitted a medical request form asking whether his "mental health form a.d.c. came back yet." (*Id*. at p.94) Defendant Grant responded by stating "[s]till waiting on it to be returned." (*Id*.)

On November 25, Mr. Marshall submitted another medical request regarding his need for his prescription medications. (*Id*. at p.98) Four days later, Defendant Grant responded that she "had faxed [his] paperwork to ADC and am awaiting a reply. Resubmit another HSRF specifically requesting medication and approval and ADC will be contacted." (*Id*.)

During November of 2016, it is undisputed that Mr. Marshall was prescribed fluoxetine for depression and proponolol for anxiety. (#49-2 at p.4)

On December 25, Mr. Marshall submitted a medical request inquiring as to the normal time period for mental health forms to be processed. (#49-3 at p.104) Defendant Munyan responded: "submit one every week, squeaky wheel . . .." (*Id*.)

On January 12, 2017, Dr. Stewart examined Mr. Marshall to treat his mental health needs. (#49-3 at p.47) Dr. Stewart contacted Mr. Marshall's previous psychiatrist, made adjustments to his therapy, and prescribed straterra and buspirone. (#49-3 at pp.51, 54)

Records indicate that Dr. Stewart reviewed Mr. Marshall's medical chart on February 12. On February 21, Mr. Marshall was released from the Detention Center.

2. Defendant Huffman

Based on the undisputed evidence in the record, Defendant Huffman is not a medical professional and was not involved in providing Mr. Marshall's medical care. (#49-1 at p.1) Mr. Marshall cannot hold Defendant Huffman liable based on his supervisory position as a Lieutenant at the Detention Center. In a § 1983 action, a supervisor cannot be held vicariously liable for the constitutional violations of a subordinate. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (U.S. 2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (holding that the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability"). To hold an official liable, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948.

The Eighth Circuit has recognized that a prison supervisor may be held liable if he fails to properly supervise his subordinates by tacitly authorizing a constitutional violation or failing to take corrective action in response to such a violation. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). To state a valid failure to supervise claim, a prisoner must allege that the prisoner supervisor: "(1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberated indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused the injury." *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010); *Otey*

6

*v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997).

Importantly, a "single incident, or series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability." *Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007). Here, Mr. Marshall does not allege that Defendants Grant or Munyan had a pattern of failing to provide inmates' medical care, or, more importantly, that Defendant Huffman knew of any such pattern of unconstitutional conduct. As a result, Mr. Marshall has failed to state a constitutional claim against Defendant Huffman.

      3. Defendants Grant and Munyan

Deliberate indifference to a prisoner's serious medical needs is prohibited under the United States Constitution.[1] *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove deliberate indifference, Mr. Marshall must show that he suffered from an objectively serious medical need and that the defendants knew of the need, yet deliberately disregarded it. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). In this context, a "serious medical need" is a condition or illness that has been diagnosed by a doctor as requiring treatment, or a need so apparent that a lay person would easily recognize the need for a doctor's attention. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Here, there is no question that Mr.

---

[1] Because Mr. Marshall was both a pre-trial detainee and an ADC inmate at the time the events giving rise to this lawsuit occurred, Mr. Marshall's inadequate medical care claims are analyzed under both the Fourteenth Amendment's Due Process Clause and the Eighth Amendment's Cruel and Unusual Punishment Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the Eighth Circuit has applied the same deliberate indifference standard to an inadequate medical care based on either the Fourteenth or Eighth Amendment. *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

Marshall suffered from serious mental health needs. The question is then whether Defendants Grant and Munyan had a sufficiently culpable state of mind?

Defendants Grant and Munyan are liable only if they "actually knew of but deliberately disregarded" Mr. Marshall's serious medical needs. *Id.* This showing requires a mental state "akin to criminal recklessness." *Id.* (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). Mr. Marshall must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). Stated another way, to prevail on this claim, Mr. Marshall must show that the Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997).

Clearly, Mr. Marshall experienced a delay in receiving psychiatric medication. However, the undisputed medical evidence reveals that Defendants Grant and Munyan were not responsible for delays, and that delays Mr. Marshall experienced were due to negligence, at most. Again, negligence is not conduct that rises to the level of a constitutional violation. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (plaintiff must show more than even gross negligence, and mere disagreement with treatment decisions does not rise to level of constitutional violation).

Furthermore, Mr. Marshall's medical records indicate that Dr. Stewart obtained Mr. Marshall's previous medical records, contacted his previous care provider, prescribed medications for anxiety and depression, and routinely examined Mr. Marshall. Finally, Defendants Grant and Munyan promptly responded to each of Mr. Marshall's medical

requests. Such evidence falls exceedingly short of deliberate indifference. As a result, Mr. Marshall's claims against Defendants Grant and Munyan fail, and they are entitled to qualified immunity.

### C. Official Capacity Claims

Defendants also argue that Mr. Marshall's official capacity claims must be dismissed. The Court agrees.

Official-capacity claims against these Defendants are, in effect, claims against Faulkner County. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). Local governments are not liable under § 1983 for injuries inflicted solely by their employees or agents, but instead, are liable only when the employee is carrying out a county policy or custom.[2] *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). *Id.*; *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 632 (8th Cir. 2009). Here, Mr. Marshall does not allege that he suffered any injury as a result of any Faulkner County policy or custom.

## III. Conclusion

The Defendants' motion for summary judgment (#47) is GRANTED. Mr. Marshall's claims are DISMISSED, with prejudice. The Clerk is directed to close this case.

---

[2] For purposes of § 1983, a policy is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010). To establish a custom, a plaintiff must prove that the county engaged in a continuing pattern of unconstitutional misconduct, not just a single unconstitutional act. *Id.* at 902-903.

IT IS SO ORDERED, this 18th day of August, 2017.

_____
UNITED STATES MAGISTRATE JUDGE